IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

JUDY A. ROBBINS,

    Appellant,

v.                                    CIVIL ACTION NO. 2:13cv446

JOHN W. TRIPP,

    Appellee.

## OPINION AND ORDER

This matter is before the Court on the Appeal of the United States Trustee ("UST"), Judy A. Robbins, of an Order of the United States Bankruptcy Court for the Eastern District of Virginia ("the Bankruptcy Court"), Doc. 1. The only issue on appeal is whether the Bankruptcy Court erred in sealing a report ("the Report") filed by Appellant John W. Tripp, Esq.'s ("Tripp") counsel. For the reasons state herein, the Court **AFFIRMS** the ruling of the Bankruptcy Court.

### I.    BACKGROUND

The following facts are recounted from the Bankruptcy Court's June 24, 2013 Order. Doc. 1-10. On June 27, 2012, the Bankruptcy Court directed Appellee's counsel Paul K. Campsen to file the Report at issue in this appeal. Id. at 1. The Report was to detail problems with the Appelle's practice before the Bankruptcy Court and to recommend solutions to these problems.[1] Id. The Bankruptcy Court instructed "that the Report be written candidly and not as

---

[1] The Report was ordered because of issues that arose during Mr. Tripp's representation of Clinton and Vanessia Mack. Generally, the Report contains details regarding Mr. Tripp's legal practice before the Bankruptcy Court. Mr. Tripp's counsel conducted interviews with current and former members of his staff. The Report recites counsel's

1

an advocate for any party to this matter." Id. Mr. Tripp filed a motion requesting the Report to be filed under seal on July 18, 2012. Id. at 2. The UST objected on July 20, 2012. Id. A hearing was held on July 25, 2012, and the Bankruptcy Court granted Mr. Tripp's motion until February 6, 2013. Id. On February 6, 2013, the Bankruptcy Court extended the seal until June 12, 2013, over the objection of the UST. Id. At the June 12, 2013 hearing, the Bankruptcy Court entered a permanent order sealing the Report, again over the objection of the UST. Id.

In granting the order, the Bankruptcy Court stated at the June 12 hearing:

> These papers are to be open and readily accessible to the public. At the same time, when I told you to file a report I said I expect you to be brutally candid in that report, and I do not think it is appropriate to hold you to the – not the legal standard but to the brutally candid standard where you said or may have said things in that report in a way that you wouldn't necessarily have said in a report that was for publication as Mr. Tripp's lawyer.
> And I think that the more balanced and reasonable approach in this instance on these facts given my instructions to you and your compliance with those instructions would be to have this report remain under seal...
> I don't think anything is going to be served by unsealing this document after nine months, ten months, eleven months now, and I certainly don't think anything's going to be served by unsealing this document after this period of time since the report addresses problems that by everyone's accounting no longer exist.

Hrg. Trscpt. at 23–24, In re Mack, No. 09-71540-SCS (Bankr. E.D. Va.), Doc. 173.

Appellant filed its Notice of Appeal on August 9, 2013. Doc. 1. Appellant's Brief was filed on September 3, 2013. Doc. 3. Appelle's Brief was filed on September 17, 2013. Doc. 4. Appellant's Reply Brief was filed on September 30, 2013. Doc. 5. A letter notifying the court of supplemental authority was filed on January 2, 2014. Doc. 7.

---

findings from those interviews, and includes details concerning how Mr. Tripp supervised his staff, how Mr. Tripp organized files, how Mr. Tripp communicated with his clients, staff turnover, and impressions of the UST regarding Mr. Tripp's legal practice.

2

## II. LEGAL STANDARDS

A district court reviews the bankruptcy court's factual findings for clear error, while questions of law are reviewed de novo. In re Merry-Go-Round Enters., Inc., 400 F.3d 219, 224 (4th Cir. 2005). The question before the Court in this appeal, whether the Report was properly sealed in accordance with 11 U.S.C. § 107, is a mixed question of law and fact. See In re Neal, 461 F.3d 1048, 1052 (8th Cir. 2006) (applying de novo review on the interpretation of the statute, but reviewing for clear error whether the matter at issue falls within the statute); In re Mitrano, 409 B.R. 812, 815 (E.D. Va. 2009) ("the reviewing court applies the clearly erroneous standard to the factual portion of the inquiry and de novo review to the legal conclusions derived from those facts."). The district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013.

## III. ANALYSIS

### A. Common Law and 11 U.S.C. § 107

At common law, there is a strong presumption in favor of public access to judicial records. See Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978). However, this is not without limits. Courts maintain "supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." Id. at 598.

The Bankruptcy Code reflects this common law tradition. 11 U.S.C. § 107(a) provides that:

> Except as provided in subsection (b) and (c) of this section ... a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge.

3

At issue in this case are the exceptions under 11 U.S.C. § 107(b), which provides that:

> On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may—(1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

No Fourth Circuit case has addressed the interpretation of this statute. The Bankruptcy Court has held that to enter a protective order, there cannot be a less drastic remedy. In re Nunn, 49 B.R. 963, 964 (Bankr. E.D. Va. 1985). In Nunn, the court restricted access to a customer list that could be harmful to the movant. Id. at 965. Likewise, a list of institutions holding defaulted mortgages was deemed to be commercial information. In re EPIC Assoc. VU, 54 B.R. 445, 449–450 (Bankr. E.D. Va. 1985).

The First, Second, Eighth, and Ninth Circuits have adopted interpretations of various parts of this statute. See In re Roman Catholic Archbishop of Portland in Oregon, 661 F.3d 417, 432–33 (9th Cir. 2011) (relying on the plain meaning of the term scandalous); In re Neal, 461 F.3d at 1054 (employing a test to determine if a matter is scandalous by asking "'whether a reasonable person could alter their opinion of Defendants based on the statements therein, taking those statements in the context in which they appear'") (quoting In re Phar Mor, Inc., 191 B.R. 675, 679 (Bankr. N.D. Ohio 1995)); In re Gitto Global Corp., 422 F.3d 1 (1st Cir. 2005) (determining that § 107(b)(2) is implicated when "(1) the material at issue would alter his reputation in the eyes of a reasonable person, and (2) that the material is untrue or that is potentially untrue and irrelevant or included for an improper end"); In re Orion Pictures Corp., 21 F.3d 24, 27 (2nd Cir. 1994) (defining commercial information as "information which would

cause 'an unfair advantage to competitors by providing them information as to the commercial operations of the debtor.'") (quoting In re Itel Corp., 17 B.R. 942, 944 (B.A.P. 9th Cir. 1982).

The case before the Court is unique in that the Report does not directly relate to a bankruptcy matter. Although filed as a document in a case, the Report contains information that concerns the Appellee's representation of all his clients, not just the particular debtor in the case. The Report was filed as part of the Bankruptcy Court's inherent power to regulate the members of its bar. See, e.g., Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991) (cautioning that the inherent power to regulate members of its bar be used with caution); In re Palumbo Family Ltd. Partnership, 182 B.R. 447, 468 (Bankr. E.D. Va. 1995) (applying the standard for evaluating attorney conduct set forth by the Supreme Court of Virginia). 11 U.S.C. § 107 was not designed to address attorney discipline: it is best seen as furthering the common law spirit of providing reasonable public access to court business. See In re EPIC Assocs. VU, 54 B.R. at 450 (looking at the Nixon factors in addition to the § 107 factors). The Report was not a normal paper in a case, but rather a starting point for the Bankruptcy Court to determine if a sanction would be proper given the Appellee's conduct. The normal reasons supporting public access does not apply in this situation; had the Report been filed as part of a Virginia State Bar investigation rather than an investigation by the Bankruptcy Court, the Report would have remained confidential. See Va. Sup. Ct. R. Part 6, § 4, ¶ 13-30.

In this case, the Appellant raises three objections to the Bankruptcy Court's sealing of the Report. First, the Appellant argues that the Bankruptcy Court applied the wrong standard. Doc. 3 at 15. Second, the Appellant argues that the Report did not contain information that is a trade secret or confidential information. Doc. 3 at 18. Finally, the Appellant argues that the material in the Report was not scandalous. Doc. 3 at 19. The Court addresses each contention in turn.

## B. Improper standard

The Appellant's first argument is that the Bankruptcy Court applied an improper good cause standard. Doc. 3 at 15. The Appellee's response was that the Bankruptcy Court applied the § 107 standards. Doc. 4 at 17.

The order on appeal stated that the motion was originally granted in 2012 to seal the Report for "good cause." Doc. 1-10 at 2. It made no mention of the § 107 factors. Id. The Bankruptcy Court referred to holding Mr. Tripp's counsel to a "brutally candid standard." Hrg. Trscpt. at 24, In re Mack. The written order only referenced the reasons stated at the hearing on June 12, 2013. Doc. 1-10 at 2. The parties briefed the § 107 issue before the Bankruptcy Court, and thus the Court was aware of the standard it was applying. The Bankruptcy Court's ruling is best interpreted as holding that there was no good reason presented as to why the information contained in the Report should be disclosed. Thus, the Court finds that the proper standard was applied.

## C. Commercial information

While the Bankruptcy Court did not apply the wrong standard in ordering that the Report remain sealed, this Court must still review the interpretation of the standard de novo. The Appellant argues that the information contained in the Report does not meet the standard of commercial information under the statute. Doc. 3 at 18. The Appellee argues that it does. Doc. 4 at 17.

In the context of § 107 of the Bankruptcy Code, the Second Circuit has defined "commercial information" as "information which would cause 'an unfair advantage to competitors by providing them information as to the commercial operations of the debtor.'" In re Orion, 21 F.3d at 27 (quoting In re Itel Corp., 17 B.R. at 944). The purpose behind the statute "is

to protect 'business entities from disclosure of information that could reasonably be expected to cause the entity commercial injury.'" In re Georgetown Steel Co., 306 B.R. 542, 546 (Bankr. D.S.C. 2004) (quoting In re Global Crossing, Ltd., 295 B.R. 720, 725 (Bankr. S.D.N.Y. 2003)). Information is not commercial simply because it relates to business affairs. In re Anthracite Capital, Inc., 492 B.R. 162, 178 (Bankr. S.D.N.Y. 2013). In this district, a customer list of a creditor has been considered confidential commercial information. In re Nunn, 49 B.R. at 965.

In Orion, the Second Circuit found that the Bankruptcy Court properly sealed information relating to a promotion agreement between the debtor and a third-party, as revealing the information in the agreement would likely give the debtor's competitors an advantage. In re Orion, 21 F.3d at 27–28. Here, Appellee focuses on the fact "the Report describes how Tripp operates his *private* practice and interacts with his clients." Doc. 4 at 17.

Appellant cites In re Dreier LLP, 485 B.R. 821 (Bankr. S.D.N.Y. 2013), for the proposition that how an entity organizes its operations is not confidential commercial information. In Dreier, the court was confronting whether information concerning the organizational structure of a hedge fund qualified under the commercial information exception. Id. at 823. While the court noted that it was private because it was not publically available, the court rejected the contention because the fund "failed to show that its disclosure in a public filing would place Westford at a competitive disadvantage." Id.

The cases support the Appellee's position that the Report contains confidential commercial information. Just as the promotion agreement in Orion would put the debtor at a disadvantage vis-à-vis its competitors, here the Report would have a similar effect. Unsealing the Report would only put the Appellee in a worse competitive position in attracting new clients

and retaining current ones. The Report would serve no purpose for another law firm then simply to be used to compete against the Appellee.

Additionally, Dreier is not persuasive in this case. There is a major distinction between the organizational structure of a hedge fund and that of a law firm. A hedge fund's purpose is to make a profit for its investors; how work is divided in such an organization is tangentially related to the purpose of investing for profit. However, the purpose of a law firm is to represent clients in the practice of law. How a law firm is organized directly relates to its product; the lawyer's practice is his stock-in-trade. Its organizational structure is part of the product: whether the lawyer, paralegal, or legal assistant will handle a particular assignment or communicate with a client is part of the product. The product that the hedge fund offers is investments. Thus, the lawyer would be placed at a competitive disadvantage by having how he organizes his practice made public, while the hedge fund would not. Thus, the Report does contain confidential commercial information.

### D. Scandalous material

While the Report would properly be sealed under the confidential commercial information exception, the Court also believes that it is protected under the scandalous and defamatory exception as well. First, the Court notes that there is a circuit split on this issue. Both the Appellee and Appellant argue that under either approach, their position is correct.

The Eighth Circuit, in determining whether a matter is scandalous, borrowed from the First Circuit's approach in discussing the defamation prong. The First Circuit found that "material that would cause a reasonable person to alter his opinion of an interested party triggers the protections of § 107(b)(2) based on a showing that either (1) the material is untrue, or (2) the material is potentially untrue and irrelevant or included within a bankruptcy filing for an

improper end." In re Gitto, 422 F.3d at 14. Applying this, the Eighth Circuit found that the question for the court is "'whether a reasonable person could alter their opinion of Defendants based on the statements therein, taking those statements in the context in which they appear'" and that the court should also consider the purpose for filing the material. In re Neal, 461 F.3d at 1054 (quoting In re Phar Mor, 191 B.R. at 679). Importantly, "injury to reputation is not enough to deny public access to court documents." Id. at 1054. Applying this test, the court did not find a creditor list of attorneys who loaned a judge money scandalous, because it only became scandalous when facts taken outside the context of the bankruptcy proceeding made it appear scandalous.[2] Id.

The Ninth Circuit rejected the Eighth Circuit's approach. The court rejected the filed for improper purpose prong because it was derived from Nixon, and § 107 abrogated the common law. In re Roman Catholic Archbishop, 661 F.3d at 432. Instead, because the statute does not define scandalous, the Ninth Circuit turned to the plain meaning. Id. at 432. The court noted that the Oxford English Dictionary defined scandalous in part as "bringing discredit on one's class or position" or "grossly disgraceful." Id. (internal quotation marks and citation omitted). The Ninth Circuit found that a matter is scandalous when it is "disgraceful, offensive, shameful, and the like." Id. To succeed, "the party seeking non-disclosure must establish only that the matter is scandalous as that word is commonly understood." Id. at 432–33. Using this definition, the court found that allegations of sexually abusing children were scandalous. Id. at 433.

The Court does not need to determine whether the Fourth Circuit would follow the Eighth or Ninth Circuit, because using either test, the Report contains scandalous material. Using the Eighth Circuit approach, the report is scandalous. First, a reasonable person could change their

---

[2] The judge took "loans" from attorneys who practiced before her. In re Neal, 422 F.3d at 1050. She subsequently filed for bankruptcy and listed the attorneys as creditors. Id. The press broke a story concerning the nature of the loans, and thus the attorneys sought to seal the list. Id.

Case 2:13-cv-00446-HCM-LRL Document 10 Filed 04/28/14 Page 10 of 11 PageID# 928

opinion of Tripp based on the Report. While there was no allegation that the material in the Report is untrue, the material contained within was not the subject of cross-examination in an adversarial proceeding.[3] The Bankruptcy Court itself directed the Report to be filed, so it was not filed for an improper purpose.[4] Doc. 10-1, at 1. There are no allegations that the Bankruptcy Court acted improperly in ordering the Report prepared and filed. Moreover, in In re Neal, the material only became scandalous when considering matters outside of the filing; a creditor list itself would not show why a person should change their opinion of the creditor. In re Neal, 461 F.3d at 1054. However, here, the Report itself contains material that could be used to alter a reasonable person's opinion of the Appellee. Additionally, the Report is potentially untrue or irrelevant. The Report had no effect on the underlying case before the Bankruptcy Court, and the Report contains opinions that were not subject to cross-examination.

Likewise, under the Ninth Circuit approach, the Report can properly be considered scandalous. The Report contains information regarding Mr. Tripp's bankruptcy practice. The Bankruptcy Court found that unsealing the Report could harm his professional reputation. Given that the Ninth Circuit found that the definition of scandalous included bringing discredit to one's profession, there is no clear error in the Bankruptcy Court keeping the Report under seal.

### E. No Less Drastic Remedy Exists

Under In re Nunn, the Bankruptcy Court should only seal a paper if no less drastic remedy exists. In re Nunn, 49 B.R. at 964. Here, the Report if unsealed would serve no useful purpose other than to embarrass the Appellee. This is not a typical bankruptcy case; it is more akin to a disciplinary proceeding in which the Bankruptcy Court found that no sanction was

---

[3] The Report does contain the opinions of many people, of which the opinions may or may not be factually truthful. However, Appellee's counsel was instructed by the Bankruptcy Court to be candid, and as such, it is reasonable to infer that the opinions were reported truthfully.

[4] Additionally, as discussed above, the Bankruptcy Court has the power to regulate the members of its bar.

appropriate. The Appellee did not have an opportunity to rebut the allegations contained in the Report. Furthermore, it would make public information that normally would be protected by the attorney-client privilege. See United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982) (setting for the test for the application of the privilege) (quoting United States v. United Shoe Mach. Corp., 89 F. Supp. 357, 358–39 (D. Mass. 1950)). Appellee's counsel filed the Report to protect his client's interests, and the Bankruptcy Court acted to ensure to the public that a member of its bar was performing at an appropriate level. Thus, sealing the Report was a proper action.

### IV. CONCLUSION

For the reasons stated above, the Court **AFFIRMS** the Bankruptcy Court.

The Clerk is **REQUESTED** to send a copy of this Order to all counsel of record.

It is so **ORDERED**

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge

HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia

Date: April 28th, 2014